UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| In re: | Case No. 11bk38875 |
| Kimberly A. Littman, | Chapter 7 |
| Debtor. | |
| Susan K. Cervac, | |
| Plaintiff, | Adversary No. 12ap00155 |
| v. | Judge Timothy A. Barnes |
| Kimberly A. Littman, | |
| Defendant. | |

TIMOTHY A. BARNES, Judge.

MEMORANDUM DECISION

Before the court once again is the Motion for Summary Judgment [Adv. Dkt. No. 48] (the "Motion") of Susan K. Cervac (the "Plaintiff"). The Motion seeks summary judgment with respect to the Complaint to Determine Dischargeability of Debt [Adv. Dkt. No. 1] (the "Complaint") filed against Kimberly A. Littman (the "Debtor"), wherein the Plaintiff asserts grounds for finding her claims nondischargeable under 11 U.S.C. § 523(a)(2)(A), (a)(4) and (a)(6).

The matter previously came before the court in 2013, at which time the court, for the reasons stated from the bench, granted summary judgment in favor of the Plaintiff on some but not all of the Complaint. See Order Granting Plaintiff's Motion for Summary Judgment [Adv. Dkt. No. 61] (the "MSJ Order"); Rule 7058 Judgment Order [Adv. Dkt. No. 60] (the "Judgment"). Following involved hearings on the Debtor's requests to vacate the MSJ Order and the Judgment, the Debtor appealed.

The court took up the Motion anew after the United States District Court for the Northern District of Illinois (the "District Court") vacated the Judgment. Upon careful review of the matter, the court finds that summary judgment in favor of the Plaintiff in the manner set forth herein is appropriate. Accordingly, the Motion is granted, in part, as discussed below.

This Memorandum Decision constitutes the court's findings of fact and conclusions of law in accordance with Rule 7052 of the Federal Rules of Bankruptcy Procedure.

## JURISDICTION

The federal district courts have "original and exclusive jurisdiction" of all cases under title 11 of the United States Code, 11 U.S.C. § 101, *et seq.* (the "Bankruptcy Code"). 28 U.S.C. § 1334(a). The federal district courts also have "original but not exclusive jurisdiction" of all civil proceedings arising under the Bankruptcy Code, or arising in or related to cases under the Bankruptcy Code. 28 U.S.C. § 1334(b). District courts may, however, refer these cases to the bankruptcy judges for their districts. 28 U.S.C. § 157(a). In accordance with section 157(a), the District Court for the Northern District of Illinois has referred all of its bankruptcy cases to the Bankruptcy Court for the Northern District of Illinois. N.D. Ill. Internal Operating Procedure 15(a).

A bankruptcy judge to whom a case has been referred may enter final judgment on any core proceeding arising under the Bankruptcy Code or arising in a case under the Bankruptcy Code. 28 U.S.C. § 157(b)(1). A proceeding for determination of the dischargeability of a particular debt arises only as a result of a case under the Bankruptcy Code and is statutorily specified as a core proceeding. 28 U.S.C. § 157(b)(2)(B) and (I); *Birriel v. Odeh (In re Odeh)*, 431 B.R. 807, 810 (Bankr. N.D. Ill. 2010) (Wedoff, J.); *Baermann v. Ryan (In re Ryan)*, 408 B.R. 143, 151 (Bankr. N.D. Ill. 2009) (Squires, J.). In addition, a motion for summary judgment under Civil Rule 56 relating to the foregoing is also a core proceeding. 28 U.S.C. § 157(b)(1) & (2).

Accordingly, final judgment is within the scope of the court's jurisdiction and constitutional authority.

## BACKGROUND

The procedural history of this case is complex. *See Cervac v. Littman (In re Littman)*, 517 B.R. 847, 851-59 (Bankr. N.D. Ill. 2014) (Barnes, J.) (setting forth the history of the matter prior to remand) (the "Bankruptcy Court Opinion" and, for citation purposes, "Littman I"). The court assumes familiarity with the Bankruptcy Court Opinion. The following summary provides additional context.

The Plaintiff and the Debtor are sisters. Their dispute is regarding the assets of their deceased mother's estate, of which the Debtor was executor. The Plaintiff accused the Debtor of improperly disbursing funds from their mother's estate, including a trust created by their mother, of which the Debtor was the trustee. She also accused the Debtor of failing to repay a loan and other miscellaneous debts, and failing to pay fees and costs related to all of the foregoing.

Prior to the commencement of the Debtor's chapter 7 bankruptcy case, an action in the Illinois courts resulted in the entry of an agreed judgment order (the "State Court Judgment") providing for restitution to the Plaintiff. *Id.* The State Court Judgment ordered the Debtor to pay restitution to the Plaintiff in the amount of $49,451.60 within two years of its entry.

On September 24, 2011, just prior to the two-year restitution deadline, the Debtor filed a petition for relief under chapter 7 of the Bankruptcy Code and listed the Plaintiff as the holder of a disputed claim. In defense thereof, the Plaintiff filed the Complaint seeking to have the debt set forth in the State Court Judgment deemed nondischargeable under 11 U.S.C. § 523(a)(2), (a)(4) and

2

(a)(6). The Debtor, who was then represented by counsel, answered the Complaint. After two unsuccessful attempts to dismiss the adversary proceeding, the Debtor's original counsel withdrew.[1]

The Plaintiff thereafter filed the Motion. The court, after examining the Motion and the State Court Judgment and reviewing the pleadings and filings submitted with respect thereto, granted the Plaintiff partial summary judgment, finding that the portion of the State Court Judgment restitution obligation relating to improperly disbursed funds and attorney's fees was nondischargeable, but that the remaining debt therein could be discharged.

The Plaintiff, first *pro se* and then with newly retained counsel, sought to vacate that determination. Through counsel, the Plaintiff raised a number of collateral attacks to the State Court Judgment. This court, for a number of reasons including, in part, the *Rooker-Feldman* doctrine, declined to entertain those attacks. *Littman I*, 517 B.R. at 862-63; *see also Rooker v. Fid. Trust Co.*, 263 U.S. 413, 416 (1923); *D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 476 (1983) (together holding that federal courts do not have subject-matter jurisdiction to act as the reviewing court for state court decisions). That decision was memorialized in the Bankruptcy Court Opinion and a related order. The Debtor thereafter appealed the Bankruptcy Court Opinion and related order, as well as the MSJ Order and the Judgment. *See* Amended Notice of Appeal [Adv. Dkt. No. 130] (the "Notice of Appeal").

On remand, the District Court determined that, of the multiple issues presented by the Debtor on appeal, there were only two that were worthy of consideration. *Cervac v. Littman (In re Littman)*, 551 B.R. 355, 362 (N.D. Ill. 2015) (the "District Court Opinion" and, for citation purposes, "Littman II").[2] In undertaking that consideration, the District Court found error in this court's analysis of each of those two issues, namely in determining that the *Rooker-Feldman* doctrine applied and in rejecting the Debtor's accord and satisfaction arguments. As such, the District Court vacated the MSJ Order and the Judgment and remanded the case for further proceedings.

While the District Court Opinion attempted to give guidance on how this court should take up the Plaintiff's motion to vacate on remand, *Littman II*, 551 B.R. at 364 ("[T]his decision does not foreclose the bankruptcy court from denying Kimberly's motion to vacate on any of the other grounds . . . ."), that issue is no longer before the court. By vacating the Judgment, *id.* ("the bankruptcy court's judgment is vacated"); Notice of Appeal, at ¶ 1 (defining "Judgment" as the Judgment defined herein), the District Court reset the matter to the stage of summary judgment. The Plaintiff's motion to vacate is mooted thereby.

In light of the foregoing, the court now considers the procedural history of this matter after remand.

---

[1] As set forth in the Bankruptcy Court Opinion, the Debtor was repeatedly warned that, despite her electing to proceed *pro se*, she remained responsible for all deadlines set in the case. *See Downs v. Westphal*, 78 F.3d 1252, 1257 (7th Cir. 1996); *Jones v. Phipps*, 39 F.3d 158, 163 (7th Cir. 1994) (holding *pro se* parties responsible for deadlines imposed by the court). Despite these warnings, the Debtor has evidenced a pattern of missed deadlines, missed hearings, incorrect filings and general neglect throughout this case. As is noted below, this pattern continued with respect to the Motion on remand.

[2] The District Court noted that any arguments other than the four that the Plaintiff actually asserted in her appeal were forfeited and outside the scope of the remand. *Littman II*, 551 B.R. at 364.

PROCEDURAL HISTORY

Given that the District Court vacated the Judgment and remanded the matter to the court without reversal, upon remand, this case was reopened and the Motion was reinstated. The court thereafter conducted status hearings on September 21, 2015 and October 20, 2015. At the conclusion of the latter hearing, the court entered an order setting a briefing schedule on the renewed Motion. *See* Order Scheduling Motion for Summary Judgment [Adv. Dkt. No. 153] (the "Scheduling Order").

Under the Scheduling Order, each of the parties was assigned deadlines to supplement their previous filings with respect to the Motion. While the Plaintiff complied with those deadlines, the Debtor did not. The Debtor first sought an extension, which was granted. The Debtor then sought an emergency hearing to request a second extension. That emergency hearing was not granted.[3] When the second extension was ultimately heard on a nonemergency basis, the Debtor's deadline was extended to and including January 22, 2016. Order dated January 6, 2016 [Adv. Dkt. No. 175] (the "Extension Order").

While the Plaintiff complied with the revised deadlines set forth in the Extension Order, the Debtor once again did not. In addition to filing her response three days after the applicable deadline, the Debtor failed to attend the hearing scheduled therein. Nonetheless, at the conclusion of that hearing on March 8, 2016, the court took the matter under advisement. In so doing, in addition to the Motion, the court considered the substance of the following filings:[4]

(1) Complaint;

(2) Answer [Adv. Dkt. No. 17] (the "Answer");

(3) Supplement of Plaintiff, Susan Kathleen Cervac, to Motion for Summary Judgment [Adv. Dkt. No. 155] (the "Supplement");

(4) Extension Order;

---

[3] The court reasoned that by seeking the extension, the Debtor had effectively tolled the deadlines until the request could be heard, thereby obviating the need for emergency consideration. Order dated December 22, 2015 [Adv. Dkt. No. 166]. In denying the emergency motion, the court instructed the Plaintiff when to schedule the motion for hearing on a nonemergency basis (in Chicago, movants choose their hearing dates and times when filing). The Debtor, however, scheduled the hearing much later than instructed. That had the effect of giving the Plaintiff an even longer deadline, without the leave of the court. As a result, that improperly scheduled hearing was stricken and reset for the time period that had been given.

[4] One thing that was not reviewed by the court was any response to the Motion when it was originally before the court. As set forth in the Bankruptcy Court Opinion, the Debtor filed no response to the Motion and did not attend the hearings on the Motion. *Littman I*, 517 B.R. at 852. The court did, however, take into account the history of this matter. Though the items set forth above do not constitute an exhaustive list of the filings in this adversary case, the court has taken judicial notice of the contents of the docket in this matter. *See Levine v. Egidi*, Case No. 93C188, 1993 WL 69146, at *2 (N.D. Ill. Mar. 8, 1993) (authorizing a bankruptcy court to take judicial notice of its own docket); *In re Brent*, 458 B.R. 444, 455 n.5 (Bankr. N.D. Ill. 2011) (Goldgar, J.) (recognizing same).

(5) Response to the Motion for Summary Judgment and Supplement [Adv. Dkt. No. 177] (the "Response"); and

(6) Reply of Plaintiff, Susan Kathleen Cervac, to Response of Defendant, Kimberly Ann Littman to Plaintiff's Motion for Summary Judgment [Adv. Dkt. No. 178] (the "Reply").

Taking the matter under advisement caused the court to become aware that this case had lay fallow for too long. In a case of this size, oversights sometimes occur, but rarely do such oversights persist for as long as they have in this case. This case was commenced in January of 2012, prior to the undersigned taking the bench. While it might have been resolved early on, it was not. As a result of multiple extensions, changes in counsel, changes in judges and the more recent complications in relation to the District Court Opinion, nearly five years later, this case remains only in its infancy.

The court therefore undertook to review the matter on a clean slate. After such review, the court identified numerous issues with the case. As a result, the court ordered the parties to appear and show cause why the matter should not be determined in the manner set forth herein. Order to Show Cause dated October 25, 2016 [Adv. Dkt. No. 183] (the "Show Cause Order"). In particular, the Show Cause Order identified four fundamental issues with the case: (a) the Debtor's Response was untimely; (b) the Debtor's Response violated the Local Rules for the United States Bankruptcy Court of the Northern District of Illinois (the "Local Rules" and as to each, "Local Rule __"); (c) the Debtor's Response asserted affirmative defenses not set forth in the Answer; and (d) the Debtor's Answer admitted the essential elements of the Count II of the Complaint. Show Cause Order, at ¶¶ 1-4.

Among other things, the Show Cause Order ordered the parties to appear on November 16, 2016 (the "Initial Show Cause Hearing") and show cause why the court should not grant summary judgment to the Plaintiff in light of the admissions of the Debtor. Show Cause Order, at ¶ 4. The Show Cause Order ordered the parties to appear and show cause why, if granting summary judgment on Count II, the court should not dismiss the alternative counts under section 523 and abstain from hearing the Debtor's collateral attacks on the State Court Judgment. Show Cause Order, at ¶¶ 5-6. The Show Cause Order was mailed to the *pro se* Debtor at the address set forth on her Response, which the court confirmed is also her address on file in the main bankruptcy case.[5] The Show Cause Order informed the parties that "[a]ny party that fails to appear and show cause will be deemed to waive his/her right to object to the court proceeding in the manner indicated" in the Show Cause Order. *Id.* at p. 2.

Once again, only the Plaintiff's counsel appeared. At the Initial Show Cause Hearing, the Plaintiff's counsel acquiesced to all elements of the Show Cause Order except the question of

---

[5] The court in fact mailed two versions of the Show Cause Order to the Debtor, one mistakenly mailed draft on October 25, 2016, *see* Certificate of Service [Adv. Dkt. No. 181], and the actually docketed Show Cause Order on October 26, 2106. *See* Certificate of Service [Adv. Dkt. No. 185]. To guard against any potential misunderstanding, the court included in the latter mailing a description of the changes. *See id.* One thing that did not change was the date, time and place of the Initial Show Cause Hearing and the direction to attend or waive the right to object.

abstention. Counsel requested additional time to consult with his client on that issue. As a result, the Initial Show Cause Hearing was continued to November 30, 2016 (together with the Initial Show Cause Hearing, the "Show Cause Hearings"). At that latter hearing, once again, the Debtor did not appear. The Plaintiff's counsel did, however, and expressed his client's agreement with respect to the remaining issue (abstention). The court thereafter took the matter under advisement for a final time.

## ISSUES ON REMAND

On remand, a trial court is bound by both the "law of the case" and the mandate rule. *United States v. Durham*, 630 F. App'x 634, 635 (7th Cir.), *cert. denied*, 137 S. Ct. 321 (2016). In this matter, the District Court's rulings on the *Rooker-Feldman* doctrine and accord and satisfaction are the law of this case. Further, ordinarily, the District Court's guidance regarding the Debtor's motion to vacate would be this court's mandate. In this case, when the District Court vacated the Judgment, the Plaintiff's motion to vacate was mooted thereby. Instead, as discussed in more detail *infra*, the original Motion is before the court anew. As a result, the aspects of the District Court Opinion relating to taking up the Plaintiff's motion to vacate on remand are not actually before the court. There are, as discussed below, other aspects of the District Court's mandate that are controlling, however.

The issues before the court have also been shaped by resolution of the matters set forth in the Show Cause Order. As stated above, in the Show Cause Order, the court identified three problems with the Debtor's Response: (a) that it was late; (b) that it failed to comply with the Local Rules; and (c) that it asserted affirmative defenses not set forth in the Answer.

At the Show Cause Hearings, the court exercised its discretion under the Local Rules and determined that the failure to comply with those rules would not be punished. *See, e.g.*, Local Rule 5005-3(E). However, in light of the Debtor's repeated failures to meet applicable deadlines and failure to appear at scheduled hearings, the court determined that the tardiness of the Response would not be excused. *Accord Westphal*, 78 F.3d at 1257; *Phipps*, 39 F.3d at 163. The Debtor has demonstrated by her prior actions in this case that she is aware of deadlines and capable of asking for relief therefrom. By choosing to ignore the deadline in the Extension Order, she ran the risk of that outcome. By failing to appear and show cause, she lost an opportunity to change it.

Even if the court were to consider the Response, the court also determined at the Show Cause Hearings that the Response (which is over 300 pages long) was largely a "data dump" on the court. The Debtor made virtually every conceivable argument she might make, irrespective of its relation to the contents of her Answer in this matter or the District Court's limitation of issues on remand. Many of those were by way of affirmative defense (*e.g.*, fraud and duress), which were not raised in her Answer and which are, by operation of Rule 8 of the Federal Rules of Civil Procedure (as to each, "Civil Rule ___"), waived. *See* Fed. R. Civ. P. 8(c)(1) (made applicable in this adversary proceeding by Bankruptcy Rule 7008(a)); *Pinto Trucking Serv., Inc. v. Motor Dispatch, Inc.*, 649 F.2d 530,

534 (7th Cir. 1981) ("The Federal Rules of Civil Procedure require a defendant to plead all his affirmative defenses in the answer to the complaint.").[6]

The problem with the Debtor's approach is that it is in derogation of the applicable rules. The Debtor's Answer, filed at a time that the Debtor was represented by counsel, contains various admissions in it. Except with respect to damages, matters so admitted are conclusively established. Fed. R. Civ. P. 8(b)(6) ("An allegation ... is admitted if a responsive pleading is required and the allegation is not denied."); *Modrowski v. Pigatto*, 712 F.3d 1166, 1170 (7th Cir. 2013). The Answer has been on file in this case for more than four years and the Debtor has never sought to amend it. The Debtor's arguments in response to the Motion are not sufficient to do so. *United States v. Kasuboski*, 834 F.2d 1345, 1350 (7th Cir. 1987) ("[A] party cannot attack issues of fact established in admissions by resisting a motion for summary judgment.").

In light of the foregoing, the court's job here is much simpler than it might otherwise be. With that in mind, the court now considers the factual findings in this matter.

### FINDINGS OF FACT[7]

From the review and consideration of the Complaint, Answer and Motion, as well as the matters set forth in the supplemental filings made after remand and not stricken by the court, the court determines the salient facts to be as follows, and so finds that:

(1) The Plaintiff and the Debtor are sisters, daughters of the late Norma E. Cervac ("Norma"). Complaint, at ¶¶ 5, 8; Answer, at ¶¶ 5, 8.

(2) On or about April 24, 1999, Norma entered into a trust agreement (the "Trust Agreement") establishing the Norma E. Cervac Living Trust (the "Trust"). Complaint, at ¶ 8; Answer, at ¶ 8.

(3) On or about May 1, 2006, Norma passed away. Complaint, at ¶ 16; Answer, at ¶ 16.

(4) The Debtor was the executor of Norma's will. Complaint, at ¶ 11; Answer, at ¶ 11.

(5) The Debtor was the trustee of the Trust. Complaint, at ¶ 15; Answer, at ¶ 15.

(6) Following Norma's passing in 2006, the Debtor liquidated the Trust, resulting in total receipts of $234,859.80. Complaint, at ¶ 18; Answer, at ¶ 18.

(7) The Debtor used proceeds of the Trust for her own personal benefit, thus depriving the Plaintiff of her fair share of the Trust. Complaint, at ¶ 20; Answer, at ¶ 20. That use constituted misappropriation. Complaint, at ¶ 98; Answer, at ¶ 98.

---

[6] The Debtor's Answer raised only one affirmative defense, that "Plaintiff has received payment for any amount she claims to be nondischargeable." Answer, at ¶ 1.

[7] To the extent that any of the findings of fact constitute conclusions of law, they are adopted as such, and to the extent that any of the conclusions of law constitute findings of fact, they are adopted as such. Adjudicative facts may also be found and determined later in this Memorandum Decision.

(8) The Plaintiff and another sibling filed a complaint against the Debtor in the Circuit Court of the Nineteenth Judicial Circuit, Lake County, Illinois (the "State Court"), Case No. 09 CH 0062, seeking an accounting of the Trust and damages stemming from the Debtor's misappropriation of Trust assets. Complaint, at ¶ 23; Answer, at ¶ 23.

(9) On December 10, 2009, the State Court entered the State Court Judgment against the Debtor, providing that the Debtor owed the Plaintiff $49,541.60, consisting of "reimbursement for (a) improperly disbursed estate funds in the amount of $21,286.60, (b) attorney fees and costs in the amount of $13,955.00, (c) an outstanding loan in the amount of $14,000 and (d) $300 for landscaping services." Complaint, at ¶¶ 24, 25 and Ex. A, at ¶ 2; Answer, at ¶¶ 24, 25.

(10) The Debtor, as the trustee of the Trust, owed a fiduciary duty to the Plaintiff. Complaint, at ¶ 21; Answer, at ¶ 21.

(11) The Debtor breached her fiduciary duty to the Plaintiff when she used proceeds of the Trust for her own personal use and benefit. Complaint, at ¶ 22; Answer, at ¶ 22.

(12) The Debtor's misappropriation of funds belonging to the Plaintiff is "fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." Complaint, at ¶ 98; Answer, at ¶ 98 (admitting defalcation and denying fraud).

(13) Subsequent to the entry of the State Court Judgment, the Plaintiff has received the sum of $10,123.70, thereby leaving a balance due and owing of $41,750.40. Complaint, at ¶ 31; Answer, at ¶ 31.

## DISCUSSION

A. <u>Summary Judgment</u>

The court examines the Plaintiff's Motion and all the properly filed pleadings by the parties anew in light of the District Court's ruling and the findings determined by the court from the Show Cause Hearings. In the Motion, the Plaintiff asserts that she is entitled to summary judgment on all counts of the Complaint. In the Complaint, the Plaintiff asserts in three respective counts that the Debtor's actions, as found by the State Court, (1) constitute actual fraud pursuant to section 523(a)(2)(A), (2) constitute fraud or defalcation pursuant to section 523(a)(4) and/or (3) constitute "willful and malicious injury" with respect to the property of the Plaintiff pursuant to section 523(a)(6).

A motion for summary judgment shall be granted if the movant can demonstrate "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Fed. R. Bankr. P. 7056. "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). On summary judgment, "it is not the court's function to resolve factual disputes or to weigh conflicting evidence." *Chicago Reg'l Council of Carpenters Pension Fund v. Jerald Van Der Laan (In re Van Der Laan)* 556 B.R. 366, 372 (Bankr. N.D. Ill. 2016) (Schmetterer, J.) (citation omitted).

8

The moving party bears the burden of demonstrating absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met that burden, the nonmoving party must adduce evidence to establish that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). The nonmoving party is required to do more than show mere existence of some metaphysical doubt as to the material facts or some alleged factual dispute between the parties in order to defeat the motion, unless the disputed fact is determinative of the outcome under applicable law. *Anderson*, 477 U.S. at 247-48.

In light of the admissions by the Debtor in her Answer set forth in the Findings of Fact above, the court takes up first Count II of the Complaint—the Count under section 523(a)(4).

B.    Nondischargeability of Debt—11 U.S.C. § 523(a)(4)

In deciding the Motion, for reasons that will become evident, the court will begin with the Plaintiff's assertion that the debt owed is nondischargeable under 11 U.S.C. § 523(a)(4), which was alleged in Count II. For a plaintiff to prevail under section 523(a)(4), it must prove that the debtor committed: (1) fraud or defalcation while acting as a fiduciary; (2) embezzlement; or (3) larceny. 11 U.S.C. § 523(a)(4).

To establish the first element of section 523(a)(4)—that a debt is nondischargeable for reasons of fraud or defalcation while acting in a fiduciary capacity—a plaintiff must show: (1) the existence of an express trust; (2) that the debt was caused by fraud or defalcation; and (3) that the debtor was acting as a fiduciary to the plaintiff at the time the debt was created. *Klingman v. Levinson*, 831 F.2d 1292, 1295 (7th Cir. 1987).

Here, the Debtor admits that there was an express trust, the Trust Agreement. Complaint, at ¶ 8; Answer, at ¶ 8. The Debtor further admits that a debt arose from her misappropriation of the Trust proceeds. Complaint, at ¶¶ 24, 25 and Ex. A, at ¶ 2; Answer, at ¶¶ 24, 25; *see also* Complaint, at ¶ 20; Answer, at ¶ 20. The Debtor admits that she was acting in a fiduciary capacity when the debt arose. Complaint, at ¶ 21; Answer, at ¶ 21; *see also* Complaint, at ¶ 22; Answer, at ¶ 22. As such, the first and third elements of *Klingman* have been established. *Klingman*, 831 F.2d at 1295; *see also* Fed. R. Civ. P. 8(b)(6).

Defalcation within the context of section 523(a)(4) is defined as "the misappropriation of trust funds held in a fiduciary capacity, and the failure to properly account for such funds." *Strube Celery & Vegetable Co., Inc. v. Zois (In re Zois)*, 201 B.R. 501, 506 (Bankr. N.D. Ill. 1996) (Schmetterer, J.) (citation omitted). Here, the Debtor has admitted to the each of the foregoing. *See supra*. She has also expressly admitted that her conduct constitutes defalcation. Complaint, at ¶ 98; Answer, at ¶ 98.

The court understands that there is an argument that defalcation is a legal conclusion and is therefore left for the court to determine regardless of the express admission. That argument was raised by the Debtor when she sought to vacate the Order and Judgment. It was considered then and rejected by the court, as follows:

> [T]he Debtor argues that the court erred, when taking together all that was before it (including, among others, the Complaint, Answer, the State Court Judgment and all

> of the affidavits and other documents submitted in support of the Summary Judgment Motion), in concluding that the defalcation required for § 523(a)(4) had been established, even though the Debtor admitted the same in the Answer itself. Though the Debtor argues that this is solely a legal conclusion and the Answer has no bearing, it is not. The question turns on the facts, and thus required opposition under Civil Rule 56(e). The uncontroverted facts before the court overwhelmingly established that funds were not disbursed as required, and that failure was the result of the Debtor's using those funds for her own personal use and benefit. Taken together, more than enough facts were extant for the court to reach the conclusion that the elements of § 523(a)(4) had been satisfied.
>
> This argument, in the court's view, is precisely the kind of argument that should have been advanced in opposition to the Summary Judgment Motion, and to allow this argument now would require the court to disregard uncontroverted facts, and would put paid to the requirements in Civil Rule 56(e) as applied by the Supreme Court in *Liberty Lobby*. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248, 106 S.Ct. 2505.

*Littman I*, 517 B.R. at 861 n.8.

That question was the first issue raised by the Debtor on appeal. *See* Appellant's Designation of Items To [sic] Including in the Record on Appeal and Statement of Issues on Appeal, p. 4, at ¶ 1. As the District Court noted, however, "[a]lthough [the Debtor's] Rule 8006 statement of issues lists seventeen different issues on appeal, …, her brief discusses only four, none of which focus on the summary judgment decision itself." *Littman II*, 551 B.R. at 360. The District Court concluded that "[t]he other thirteen issues are forfeited." *Id.*

The District Court made clear that the scope of this court's review on remand did not include those items forfeited on appeal, as follows:

> The court notes that any arguments other than the four that Kimberly actually pressed in this appeal *have been forfeited and are outside the scope of the remand. See United States v. Adams*, 746 F.3d 734, 744 (7th Cir. 2014) ("The law of the case doctrine is a corollary to the mandate rule and prohibits a lower court from reconsidering on remand an issue expressly or impliedly decided by a higher court absent certain circumstances. Thus, the law of the case doctrine precludes a defendant from raising an argument not raised during his first appeal.") (internal quotation marks and citation omitted); *Kovacs v. United States*, 739 F.3d 1020, 1024 (7th Cir. 2014) ("A court to which a case has been remanded may address only the issue or issues remanded, issues arising for the first time on remand, and issues that were timely raised but which remain undecided."); *United States v. Husband*, 312 F.3d 247, 250 (7th Cir. 2002) ("[T]his court does not remand issues … when those issues have been waived or decided.").

*Littman II*, 551 B.R. at 364 (emphasis added); *see also Durham*, 630 F. App'x at 635.

In light of the express directions from the District Court and this court's prior determination of the defalcation issue, the court must conclude that the second element of *Klingman* has been satisfied as well.

10

As a result, the Plaintiff has established that she is entitled to summary judgment on Count II of the Complaint as to all issues but the value of the nondischargeable claim. There is no genuine dispute as to any material fact and the Plaintiff is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); Fed. R. Bankr. P. 7056. That determination makes the Plaintiff's alternative counts moot. *See, e.g., Kellogg–Citizens Nat'l Bank of Green Bay v. DeBruin (In re DeBruin)*, 144 B.R. 90, 94 n.2 (Bankr. E.D. Wis. 1992) (finding for the plaintiff under section 727 and then dismissing as moot alternative counts under the same section); *accord Thiara v. Spycher Bros. (In re Thiara)*, 285 B.R. 420, 426 (B.A.P. 9th Cir. 2002) (declining to consider alternative counts on appeal in a section 523 matter).

C.    The Value of the Plaintiff's Claims

The remaining issue is the monetization of the claims relating to the debt, which need not be determined at this time. *Leonard v. RDLG, LLC (In re Leonard)*, 644 F. App'x 612, 620 (6th Cir. 2016) ("[A] bankruptcy court may answer the nondischargeability question without deciding the value of the claim.").

In the Judgment, the court bifurcated the Plaintiff's claim into those relating to the defalcation debt (the "Fiduciary Debt"), and those other, ancillary debts also included in the State Court Judgment (the "Nonfiduciary Debt"). The Fiduciary Debt was memorialized in (a) and (b) of paragraph 2 of the State Court Judgment and was determined to be nondischargeable, while the Nonfiduciary Debt was memorialized in (c) and (d) of paragraph 2 of the State Court Judgment and was determined to be dischargeable. Complaint Ex. A, at ¶ 2. Nothing in the District Court Opinion or applicable law appears to upset that determination, *Durham*, 630 F. App'x at 635, though, as a result of the District Court Opinion, the quantification of each of the Plaintiff's claims relating to the respective debts is no longer settled.

The value of the claims is purely one of state law, and, in light of the court's determination of nondischargeability and the fact that the Debtor's bankruptcy case is a no asset case, *see* Chapter 7 Trustee's Report of No Distribution [Dkt. No. 11], has no effect on the estate of the debtor or the payments to creditors. *In re Mendiola*, 99 B.R. 846, 865 (Bankr. N.D. Ill. 1989) (Barliant, J.) (finding no bankruptcy purpose to claims resolution in a no-asset chapter 7 case). As such, this court's jurisdiction to hear the issue is in question. *Celotex Corp. v. Edwards*, 514 U.S. 300, 308 n. 6 (1995) ("[B]ankruptcy courts have no jurisdiction over proceedings that have no effect on the estate of the debtor."); *In re Feng Li*, 610 F. App'x 126, 130 (3d Cir. 2015), *cert. denied sub nom. Feng Li v. Peng*, 136 S. Ct. 1189 (2016).

Even if this court has such jurisdiction, under the unique circumstances of this case, it would abstain from hearing them. *Accord Feng Li*, 610 F. App'x at 130 (affirming bankruptcy court's finding that it lacked jurisdiction or, in the alternative, that it would *sua sponte* abstain from hearing the question posed to it).

The United States Code permits a federal court to abstain from resolving certain actions in "the interest of justice, or in the interest of comity with State courts or respect for State law." 28 U.S.C. § 1334(c)(1). The decision to abstain under section 1334(c) is not reviewable, 28 U.S.C. § 1334(d); *Brown v. JPMorgan Chase Bank, NA (In re Brown)*, 572 F. App'x 849, 851 (11th Cir. 2014), and may be raised *sua sponte* by the court. *Feng Li*, 610 F. App'x at 130; *Brown*, 572 F. App'x at 851; *In re Repurchase Corp.*, 329 B.R. 832, 835 n.2 (Bankr. N.D. Ill. 2005) (Schmetterer, J.) ("A court may

11

raised the issue of abstention *sua sponte.*") (*citing to Hunerwadel v. Baird*, 428 U.S. 132, 143 n. 10 (1976)). Because the court raised the question of abstention *sua sponte* in this matter, it did so in the context of the Show Cause Order. The Show Cause Order provided both the Plaintiff and the Debtor notice and an opportunity to be heard on the question. The Plaintiff indicated that she did not object to abstention, and the Debtor (as has been typical in this case) did not appear or otherwise respond. As such, abstention is not opposed. Nonetheless, the requirements for abstention must be met.

While the statute does not provide criteria for permissive abstention, the Seventh Circuit has adopted the following factors from the Ninth Circuit:

> (1) the effect or lack thereof on the efficient administration of the estate if a Court recommends abstention, (2) the extent to which state law issues predominate over bankruptcy issues, (3) the difficulty or unsettled nature of the applicable law, (4) the presence of a related proceeding commenced in state court or other nonbankruptcy court, (5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334, (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case, (7) the substance rather than form of an asserted "core" proceeding, (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court, (9) the burden of [the bankruptcy court's] docket, (10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties, (11) the existence of a right to a jury trial, and (12) the presence in the proceeding of nondebtor parties.

*In re Chicago, Milwaukee, St. Paul & Pac. R.R. Co.*, 6 F.3d 1184, 1189 (7th Cir. 1993) (*citing In re Eastport Assoc.*, 935 F.2d 1162, 1167 (9th Cir. 1990)). The Seventh Circuit instructed courts to apply these factors flexibly. *Id.*

In this matter, not only is the court faced with the complexity of handling the Debtor's collateral attacks on the State Court Judgment in light of the District Court Opinion, but also the controlling Seventh Circuit law that requires consent of the parties or proposed findings and conclusions be sent to the District Court. *See, e.g., Siragusa v. Collazo (In re Collazo)*, 817 F.3d. 1047, 1053 (7th Cir. 2016). In *Collazo*, the Seventh Circuit recognized that "[i]f a claim is not discharged in bankruptcy but there are no assets in the estate to distribute to the creditor and therefore the debt is still owing, the claimant is free to seek damages against the debtor under the applicable state law defining a creditor's rights." *Id.* That is the case here. In so doing, the Seventh Circuit also explained that that alternative did not automatically deprive the bankruptcy court of jurisdiction. *Id. But see Celotex*, 514 U.S. at 308 n. 6. It instructed the bankruptcy court to consider the alternatives of consent and proposals. *Collazo*, 817 F.3d. at 1053. Nothing in *Collazo*, however, directly addressed the *Celotex* concerns noted above.

The abstention factors, however, make *Collazo*'s further inquiry a needless one and avoid the need to reconcile *Collazo* with *Celotex*. Based on the undisputed facts, factors 1, 2, 3, 4, 5, 6, 8 and 9 of *Chicago, Milwaukee* weigh in favor of abstention. This relatively small matter has been pending in the federal courts now for nearly five years without preceding beyond dispositive motions, even though the Plaintiff already has monetization of most her claims by way of the State Court Judgment. While evidence has been taken, it was done solely in the context of a motion to vacate

this court's grant of summary judgment and, in light of the District Court's vacating the Judgment, is not the law of this case. Proceeding on the Plaintiff's claims will involve this court in evidentiary matters that are purely a matter of state law, with no effect on the Debtor's bankruptcy case. These issues appear to be all that prevent the closure of the bankruptcy case, though it is a no asset chapter 7 case and nothing with respect to the determination of these claims will affect the Debtor's estate or recoveries of creditors. While this court is no better suited to hear the evidentiary disputes, it is considerably worse off in determining the validity of the Debtor's collateral attacks on the State Court Judgment. As a result, the value of the Plaintiff's remaining claims under the State Court Judgment is best heard by the State Court itself.

As such, the court abstains from determining the value of the nondischargeable claim owed to the Plaintiff.

## CONCLUSION

Having considered all of the foregoing, the court therefore concludes that the Plaintiff's Motion is well taken insofar as it asks this court to determine that the Fiduciary Debt owed by the Debtor to the Plaintiff is nondischargeable under 11 U.S.C. § 523(a)(4). In granting the Motion on those grounds, the court determines that the alternative grounds are moot. Last, as to the present valuation of the claims underlying the Fiduciary Debt and the Nonfiduciary Debt, the court abstains from making that determination.

A separate order will be issued concurrent with this Memorandum Decision, granting the Motion for Summary Judgment and a Judgment Order will be entered pursuant to Bankruptcy Rule 7058.

Dated: December 21, 2016

Timothy A. Barnes
United States Bankruptcy Judge